JOSEPH KULIG'S CASE.

Hampden.   May 4, 1954. — June 30, 1954.

Present: QUA, C.J., LUMMUS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Workmen's Compensation Act*, Injuries to which act applies;  Procedure:
notice, filing of claim.  *Proximate Cause*.

Medical and other evidence in a workmen's compensation case war-
ranted a finding by the Industrial Accident Board that the employee
sustained an injury arising out of and in the course of his employment
"in that . . . tuberculosis [incapacitating him] was aggravated,
hastened or precipitated as a result of work as a paint sprayer and
grinder of emery wheels."  [525]

An award of compensation in a workmen's compensation case was not
precluded by want of notice of an injury to the employee consisting of
tuberculosis resulting from work as a paint sprayer and grinder of
emery wheels, or by failure to file a claim for compensation seasonably,
where it appeared, among other things, "that the employee was
treated for a tubercular condition immediately after the condition was
diagnosed and that the employer had knowledge thereof."  [525–526]

CERTIFICATION to the Superior Court of a decision by the
Industrial Accident Board under the workmen's compensa-
tion act.

The case was heard by *Meagher*, J.

*Arthur E. Quimby*, for the insurer.

*Henry A. Moran, Jr.*, for the claimant.

LUMMUS, J.   The employee began work for Savage Arms
Corporation in 1942, when he was given a physical exam-
ination, including an examination of his lungs.  He was
found in good health.  In 1945 he had an X-ray examina-
tion, which was satisfactory.  After that he polished small
parts, using emery dust.  His nose and mouth would get
full of dust, and his nose bled.  In 1947 he changed to a
different job, spraying lawn mowers with paint.  He worked
on that job about a year.  Although he used a mask most
of the time, the paint would go through the mask, and his

face, chest, teeth and nose would be covered with paint. When he blew his nose, paint would come out. He was tired, and coughed much. He lost weight, and had difficulty in lifting seventy-five pounds in his work. In 1947 he had an X-ray, and his foreman told him to see Dr. Hosman, which he did. In November, 1950, he stopped work, because he was too tired to continue.

Dr. Hosman testified substantially as follows. On August 30, 1947, he made a definite diagnosis of the employee's trouble as pulmonary tuberculosis. After that the employee grew worse, suffering from coughing, headache, dizziness, lack of appetite, night sweats, pain in the chest and very high temperature. On December 18, 1950, he became a patient at the Westfield Sanatorium. The witness expressed the opinion that the emery dust and the paint had a causal relation to the tuberculosis. He testified, "Pulmonary tuberculosis is caused by tubercle bacillus and paint and emery dust are predisposing causes in the pathological development of pulmonary tuberculosis."

The single member found that in 1947 the employee had tuberculosis arising out of and in the course of his employment "in that his tuberculosis was aggravated, hastened or precipitated as a result of work conditions." The reviewing board struck out the word "conditions" and substituted therefor the words "as a paint sprayer and grinder of emery wheels." With that change it affirmed the findings of the single member.

The findings of the reviewing board are final if supported by any evidence. *McKeon's Case,* 326 Mass. 202, 203. *Karelis's Case,* 328 Mass. 224. We have no doubt that there was evidence of a causal connection between the work and the subsequent tuberculosis and disability. *Duggan's Case,* 315 Mass. 355. *Josi's Case,* 324 Mass. 415.

By G. L. (Ter. Ed.) c. 152, § 41, notice of an injury must be given to the insurer or insured as soon as practicable after the happening thereof, and claim for compensation must be made within six months after the injury. In the present case there was no compliance with the statute. But

by § 44 "want of notice shall not bar proceedings, if it be shown that the insurer, insured or agent had knowledge of the injury, or if it is found that the insurer was not prejudiced by such want of notice." By § 49 the same rule as to prejudice is true of the failure seasonably to make claim. The single member and the reviewing board found "that the employee was treated for a tubercular condition immediately after the condition was diagnosed and that the employer had knowledge thereof."

The usual forms of prejudice to the insurer are the failure of the employee to be treated medically promptly after the injury, and the inability of the insurer to procure evidence because of the delay in learning of the injury. *Tassone's Case*, 330 Mass. 545, 547–548. See also *Charron's Case*, *ante*, 519. The facts in the present case are comparable to those in *Tassone's Case*. Obviously the taking into the human body of emery dust and paint suggested the likelihood of tuberculosis. The employer and the insurer in the course of their business could be found to have known that likelihood. The employee had medical treatment from the time when his ailment was first diagnosed as tuberculosis. So far as appears, no physician other than Dr. Hosman knew anything about the condition of the employee while he was working and Dr. Hosman testified fully.

There was no error, we think, in the decree of the Superior Court awarding compensation. The allowance for the cost of attorney's fees, briefs and expenses (G. L. [Ter. Ed.] c. 152, § 11A, inserted by St. 1945, c. 444, as amended) is referred to the single justice.

*Decree affirmed.*