# DECISIONS

# SUPREME JUDICIAL COURT

OF

## MASSACHUSETTS

---

### ROBERT E. SIMONS, SR.'S CASE.

Hampden.    November 8, 1968. — December 2, 1968.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Workmen's Compensation Act*, Time of injury, What insurer liable, Notice, Filing of claim.

Where it appeared in a workmen's compensation case that the employee over a long period of employment in dyeing plants inhaled the fumes and dust of irritating chemicals and developed a severe disabling pulmonary bullous emphysema, that he ceased work on a certain day, and that during his employment three successive insurers were on the risk, testimony by his physician that his exposure to the fumes and dust in the whole period of his employment, including the last two months when the third insurer was on the risk, caused his condition to progress warranted a finding by the Industrial Accident Board that the disease reached its conclusive disabling effect on the day he ceased work, even though the last two months of his employment alone would not have substantially aggravated the disease, and upon such finding a decree ordering total incapacity compensation to be paid by the third insurer was proper. [3-4]

A finding by the Industrial Accident Board that an insurer was not prejudiced by lack of formal notice of injury and by late filing of claim for compensation was warranted by the evidence in a workmen's compensation case involving an employee who developed a severe disabling pulmonary bullous emphysema as a result of inhaling the fumes and dust of irritating chemicals over a long period of employment and who was attended shortly after he became totally disabled and ceased work by a physician recommended by his employer. [4]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the Workmen's Compensation Act.

The case was heard by *Tisdale,* J.

*Charles B. Gray, Jr.,* for Lumbermens Mutual Casualty Company.

*James H. Tourtelotte* for American Mutual Liability Insurance Company.

*Robert A. Gelinas* for Aetna Casualty and Surety Company.

*John D. Ross, Jr., & George W. Leary,* for the employee, submitted a brief.

WHITTEMORE, J. The employee over a long period of employment in dyeing plants, during which there were three successive workmen's compensation insurers, inhaled the fumes and dust of irritating chemicals and developed a severe disabling pulmonary bullous emphysema. He ceased work on November 9, 1962, and except for two days in December, 1962, has not worked since. The third insurer had been on the risk on and after August 30, 1962. The issues presented by that insurer's appeal from the decree in the Superior Court awarding compensation on the reviewing board's decision are whether there was adequate basis for the board's finding that there was causal connection between the disability and the employee's exposure in the period from August 31, 1962, to November 9, 1962, and whether lack of formal notice and late filing of claim prejudiced the insurer.

A physician who attended the employee on and after November 14, 1962 (he was the physician of "the owner" of the then corporate employer and was recommended by him), testified that the chemicals, if they did not initiate the employee's affliction, "certainly had severe aggravating effect on this man's disease." As to whether inhalation of the offending substances from the time of the employee's hospitalization in 1961 down to November of 1962 "caused the condition to progress," the physician answered "Progression? . . . In that period of time, yes." Another physician attributed the affliction to the employee's con-

tinuing use of cigarettes but the employee's physician testified that the bullous type of emphysema was unusual and "a highly destructive type . . . which is rarely associated with cigarette smoking."

The insurer's contention that causation is not shown depends upon the testimony of this physician set out in the margin.[1] This testimony is ambiguous. Reasonably construed, it states the view that short periods of exposure considered by themselves would not substantially aggravate the disease. It does not, however, negative the other testimony that the exposure in the whole period including the last two months caused the condition to progress. Undoubtedly, the increase in the affliction in any two or three months period separately considered would be difficult to measure. But exposure in the last two months was no less significant than in any other two months period throughout the years of work and the physician did not indicate to the contrary. The board could find that the progressive disease reached its conclusive disabling effect on November 9, 1962, when in fact the employee ceased work. *DeFilippo's Case*, 284 Mass. 531, 533–534. *Fabrizio's Case*, 274 Mass. 352, 354. *Langford's Case*, 278 Mass. 461, 463. *Crowley's Case*, 287 Mass. 367, 371. *Long's Case*, 337 Mass. 517, 521. *Joyce's Case*, 350 Mass. 77, 82. The case at bar is distinguishable from *Anderson's Case*, 288 Mass. 96, 100, as there the board found against the first insurer. That insurer's coverage had ceased on November 14, 1930. The employee worked until December 4, 1930, and the second insurer was on the risk on and after December 3, 1930.

---

[1] Q. "This bullous type emphysema, is it rapidly progressive, doctor?" A. "Yes, it is, over a period of years. Talking about rapidity — it is relative." Q. "So, exposure to irritants for a short time could very well not affect —." A. "What do you mean by a short time?" Q. "By, say, a year — would exposure of a year have any effect on it?" A. "It could have an aggravating effect, but probably not a causative one by itself." Q. "Say, an exposure over a nine-month period — would that appreciably affect it?" A. "It would not produce this bullous change — not very likely." Q. "Exposure over six months — would that appreciably affect it?" A. "That's giving a lesser period; I said no for nine months." Q. "And it would be even less for two or three months?" A. "That's correct." Q. "We still do not have to look very far for an irritant, as to a preexisting condition, if we look to smoking habits?" A. "As I said before, yes, you do, because of the bullous change."

This court held that the findings were permitted that the point of "incapacity for work" had been reached prior to November 14, 1930, and that the work after that day had no appreciable effect. Assuming that similar findings could have been made in the case now before us, they were not required. It is a workable and fair rule that the last of successive insurers be charged if there is a basis for so doing.

The filing of claim eleven months after November 9, 1962, was of course late and there was no prior formal notice. But the circumstance of exposure was not contested, only its significance. *Kulig's Case*, 331 Mass. 524, 526. The board's finding of lack of prejudice was within reason on the evidence. *Mahoney's Case*, 337 Mass. 629, 632. *Davidson's Case*, 338 Mass. 228, 232. *Ogonowsky's Case*, 338 Mass. 468, 471. *Robinson's Case*, 354 Mass. 282, 284–285. Compare *Russell's Case*, 334 Mass. 680.

The decree is affirmed. Costs and expenses of appeal shall be determined by the single justice.

*So ordered.*